UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                   )
LILIA MARIA ABBATEMATTEO,          )
                                   )
          Plaintiff,               )    C.A. No. 17-331 WES
                                   )
     v.                            )
                                   )
                                   )
FEDERAL HOUSING FINANCE AGENCY,    )
FEDERAL NATIONAL MORTGAGE          )
ASSOCIATION, AND JP MORGAN CHASE   )
BANK, N.A,                         )
                                   )
          Defendants.              )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

This case is before the Court on a Motion from Defendant JP Morgan Chase Bank ("Chase") to Dismiss (ECF No. 10) the Complaint (ECF No. 1) filed by Plaintiff Lilia Maria Abbatematteo. After reviewing the alleged facts, the Court DENIES all but part of Chase's Motion.

I. Background

On November 15, 2002, Maria E. Amaral, Plaintiff's mother, borrowed $90,000, which was recorded on a promissory note, and secured by a mortgage on Plaintiff's primary residence. (See Compl. ¶¶ 47-48.) The mortgage was signed by Amaral, Domingos P. Arruda, and Plaintiff. (Id.) In June 2003, these three signed a corrective quitclaim deed, which granted them title as joint

tenants. (See id. at ¶ 49.) On August 31, 2009, Amaral passed away. (Id. at ¶ 51.) A few months later, Arruda moved out and stopped contributing to payments due on the note. (Id.) Later, when Plaintiff's wages dropped, she fell behind on the mortgage payments. (Id.) On September 6, 2013, Fannie Mae foreclosed on the property, and on May 12, 2014, Plaintiff filed an action in federal court ("Abbatematteo I"), before applying for a loan modification and assumption on July 9. (Id. at ¶¶ 55-57.)

On September 18, 2014, during a court-ordered mediation in Abbatematteo I, the parties signed a Settlement Terms Agreement in Principal ("Agreement"). (Id. at ¶ 60.) There, the parties agreed that if Plaintiff provided an application by November 15, Chase would review it, and Arruda's participation in the application process would not be required. (Id.) Plaintiff submitted an application before November 15, and the Court entered a Consent Judgment, setting aside the foreclosure, returning the property to Plaintiff, and stating the mortgage was valid, "subject only to a modification and assumption agreement entered between the parties which shall also be recorded in the official records of the City of Providence." (Id. at ¶¶ 61, 63.) Before providing Plaintiff with a modification, Chase requested additional documentation on December 9 and 23, 2014, and then again on June 14, 2015, after Plaintiff had submitted another application for loan modification and assumption. (Id. at ¶¶ 65-68.)

2

On February 10, 2016, Fannie Mae, through Chase, scheduled a foreclosure proceeding for April 4, and on April 1, Plaintiff filed a petition for protection in United States Bankruptcy Court, where she filed a request to participate in the Court's Loss Mitigation Program, and submitted yet another application for modification to Chase around May 20, 2016.  (Id. at ¶¶ 69-71.)  Chase refused to review Plaintiff's application unless Arruda conveyed his interest to Plaintiff.  (Id. at ¶ 72.)  So on August 26, 2016, Plaintiff negotiated a quitclaim deed with Arruda, paying him $16,000 for his interest, making Plaintiff the sole owner of the property.  (Id. at ¶ 73.)  Plaintiff provided a copy of the quitclaim deed to Chase, along with her fifth (and final) application for a loan modification.  (Id. at ¶ 74.)

On January 18, 2017, Chase denied Plaintiff's fifth application because they claimed they could not create an "affordable payment without changing the terms of the mortgage beyond the modification program's requirements."  (Id. at ¶¶ 77-78.)  Plaintiff requested an appeal of this denial on February 2, 2017.  (Id. at ¶ 84.)  Chase stated it would not respond to her appeal until she proved she was the sole owner of the property. (Id. at ¶85.)  On May 19, 2017, Plaintiff emailed the Rhode Island Housing Resource Commission ("RIHRC"), who forwarded the email to Chase and Fannie Mae, questioning why Plaintiff was denied a loan modification and assumption.  (Id. at ¶ 88.)  Chase again told

3

Plaintiff it would not respond until she proved she was "the sole name on the title." (Id. at ¶ 90.)

Plaintiff brought this action on July 14, 2017.

II. Discussion

The Complaint contains six counts: one each for violation of due process, breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation, breach of the covenant of "extreme" good faith, and violation of 12 C.F.R. 1024.41. Chase has moved to dismiss each of these counts insofar as they concern it.

"To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Katz v. Pershing, LLC, 672 F.3d 64, 72-73 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quotation marks omitted). When deciding a motion to dismiss, the Court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Further, "[t]he Court may include in its analysis (a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss."

Lisnoff v. Stein, 925 F. Supp. 2d 233, 236 (D.R.I. 2013) (quotation marks omitted).

    A.   Count One: Due Process

Count One alleges Plaintiff's property was deprived without due process. (See Compl. ¶ 96.) Chase moves to dismiss this claim, but as Plaintiff clarified in her response, Count One is not directed at Chase. (Mem. Supp. Pl.'s Obj. to Def.'s Mot. to Dismiss ("Objection") 6, ECF No. 12.) Accepting Plaintiff's understanding of her claim, the Court will deny Chase's Motion as to Count One.

    B.   Count Two: Breach of Contract

Plaintiff accuses Chase of breaching both the Agreement and the Consent Judgment. (See Compl. ¶¶ 103-07.) When the Court is sitting in diversity, the law of the forum state – in this case, Rhode Island – applies. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). And here, to make out a breach of contract, "the plaintiff must prove both the existence and breach of a contract, and that the defendant's breach thereof caused the plaintiff's damages." Fogarty v. Palumbo, 163 A.3d 526, 541 (R.I. 2017).

Chase argues that the Agreement is not a contract, and that even if it were, the bank did not breach it. (See Mot. to Dismiss 8.) These arguments fail. The Agreement is a contract under Rhode Island law. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 394 (D.R.I. 1998) ("[S]ettlement agreements are

5

treated as contracts and enforced under the rules governing contracts generally." (applying Rhode Island law)). And Plaintiff has alleged a breach of several of its provisions. For example, Plaintiff alleges Chase breached the Agreement "by failing or refusing to review the Plaintiff's application in accordance with Fannie Mae's guidelines." (Compl. ¶ 104; see also Compl. Ex. 27, ECF No. 1-27) (outlining reasons why Plaintiff qualified for the modification under either the Home Affordable Modification Program or Fannie Mae's Standard Modification Program).

Plaintiff also claims that Chase breached the Agreement when it required Arruda to participate in the review of her application. (Compl. ¶ 106.) And indeed, the Agreement is clear that Arruda's participation was not necessary until after the approval of Plaintiff's application. (See Compl. Ex. 22, at ¶ 10, ECF No. 1-22.) Therefore, Plaintiff states a plausible claim for breach when she alleges Chase required her to obtain a quitclaim deed from Arruda prior to the review of her application. (See Compl. ¶¶ 73, 106.)

As with the Agreement, Chase argues that breach of the Consent Judgment cannot give rise to a breach-of-contract claim. And as with the Agreement, Chase is wrong: the Consent Judgment can in fact be enforced via a contract claim. See Local No. 93, Int'l Ass'n of Firefighters v. Cleveland, 478 U.S. 501, 519 (1986) ("[C]onsent decrees have attributes of both contracts and judicial

decrees." (quotation marks omitted)); Arrieta-Gimenez v. Arrieta-Negron, 859 F.2d 1033, 1041 (1st Cir. 1988) (noting that consent judgment is "no more than a judicially approved contract." (quoting Crowe v. Cherokee Wonderland, Inc., 379 F.2d 51, 54 (4th Cir. 1967))); McEntee v. Davis, 861 A.2d 459, 462 (R.I. 2004) ("A consent judgment is a contract, subject to the rules of contract law."); 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4443 (West 2d ed. 2018) ("The [consent] judgment results not from adjudication but from a basically contractual agreement of the parties.").

Chase has a better argument against this particular claim, though – namely, that the Consent Judgment does not, as Plaintiff argues, require Chase to modify or assume Plaintiff's loan. (See generally Def.'s Reply to Pl.'s Obj. ("Reply"), ECF No. 14.) The Consent Judgment states, in relevant part, "The mortgage and note are hereby stipulated to be valid and of full force and effect, subject only to a modification and assumption agreement entered between the parties which shall . . . also be recorded in the office records of the City of Providence." (Compl. Ex. 23, at 1-2; ECF No. 1-23.) Chase says of this language that it does nothing to require the bank to modify Plaintiff's loan; instead, it merely commands that *if* the parties enter a modification agreement, that agreement must be recorded. (See Reply 4.)

7

Chase's reading is not implausible. But it is not beyond reproach, either. The most straightforward reading of the clause is that the mortgage and note are subject to a modification agreement already entered by the parties. This cannot be what the court meant, however, because there has never been any such agreement. Another way to interpret the clause as consistent with this reality – that is, a way other than what Chase proposes by reading the conditional "if" into the clause – is to give "entered" a future-perfect gloss: "subject only to a modification and assumption agreement [to be] entered between the parties." (Compl. Ex. 23, at 2.) This reading comports with Plaintiff's view that the Consent Judgment assumed that Chase would modify the loan. Further evidence in favor of Plaintiff's exegesis is the word "shall," which denotes necessity: if a modification agreement must be recorded, it must first – the argument goes – be entered into. See Anderson v. Yungkau, 329 U.S. 482, 485 (1947) ("The word 'shall' is ordinarily 'the language of command.'").

The foregoing persuades the Court that the Consent Judgment is ambiguous as to whether it makes entry into a loan modification agreement mandatory. See Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins., 11 A.3d 1078, 1084 (R.I. 2010) ("A contract . . . is ambiguous when it is reasonably susceptible of different constructions." (quotation marks omitted)). And because the meaning of an ambiguous contract term is a question of fact,

8

Botelho v. City of Pawtucket Sch. Dep't, 130 A.3d 172, 177-78 (R.I. 2016), which at this stage must be answered in Plaintiff's favor, Schatz, 669 F.3d at 55, the Court finds that Plaintiff has made out a claim for breach of the Consent Judgment. See Clukey v. Town of Camden, 717 F.3d 52, 59 (1st Cir. 2013) ("[A]mbiguous contract provisions foreclose dismissal of complaint . . . .").

    C.    Count Three: Good Faith and Fair Dealing

Plaintiff alleges Chase violated the implied covenant of good faith and fair dealing in both the Agreement and Consent Judgment. (Compl. ¶ 111.) Rhode Island recognizes an implied covenant of good faith and fair dealing in every contract. See Centerville Builders v. Wynne, 683 A.2d 1340, 1342 (R.I. 1996). "The implied covenant of good faith and fair dealing ensures that contractual objectives may be achieved, and that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." McNulty v. Chip, 116 A.3d 173, 185 (R.I. 2015) (citations and quotation marks omitted).

The Court need not delve into the propriety of Chase's conduct, however, because "a claim for breach of the duty of good faith and fair dealing is precluded where the claim arises from the same factual allegations as a breach of contract claim." Roy v. GE, 544 F. Supp. 2d 103, 109-110 (D.R.I. 2008). In other words, when a plaintiff's claim for breach of the implied covenant

9

"essentially incorporates by reference the allegations in the previous claim for breach of contract, it must be dismissed." Id. at 110 (quotation marks omitted); see also McNulty, 116 A.3d at 185 ("[A] claim for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract."). And here Plaintiff reuses her breach-of-contract allegations to support her implied-covenant claim. The Court will therefore grant Chase's Motion to Dismiss as to Count Three.

D. Count Four: Misrepresentation[1]

Chase argues that Plaintiff's misrepresentation claim should be dismissed because nowhere in the Agreement or Consent Judgment does it say that Chase was required to modify Plaintiff's loan. The problem with this argument is it rests on a question of fact – which, as discussed directly above, must be construed at this stage in Plaintiff's favor - whether such a requirement exists. Chase's argument thus fails; Plaintiff's misrepresentation claim can stay.

E. Count Five: Breach of Extreme Good Faith

The doctrine of "extreme good faith" is discussed in Fenley v. Cassidy, where the court stated that "extreme good faith . . .

---

[1] Plaintiff acknowledges that there are two claims labeled "Count III." (Objection 12 n.3.) For clarity's sake, the Court takes the liberty of renumbering.

is required by the trust relation subsisting between the parties." 43 A. 296, 297 (R.I. 1899). This century, however, courts have recognized that while such duty may have existed "in a previous era in limited circumstances, it has long since been subsumed." Pemental v. Bank of N.Y. Mellon, No. 16-483S, 2017 WL 3279015, at *5 n.11 (D.R.I. May 10, 2017). This claim will therefore be dismissed.

F. Count Six: Regulation X Violation

The Real Estate Settlement Procedures Act was enacted to "provide consumers with greater information and protect them from certain abusive practices." First Fed. Sav. & Loan Ass'n v. Greenwald, 591 F.2d 417, 420 n.5 (1st Cir. 1979) (citing 12 U.S.C. §§ 2601 (2018)). Enacted pursuant to RESPA, 12 C.F.R 1024.41 – i.e., "Regulation X" – provides home-loan borrowers with various protections, see, e.g., 12 C.F.R. § 1024.41(b)(1), some of which Plaintiff accuses Chase of violating, (see Compl. ¶¶ 78, 84-85, 88-90, 131).

Chase argues its relationship to Plaintiff is not covered by Regulation X because she was not a party to the note. Plaintiff was, however, named as a "Borrower" in the mortgage and subject to the covenants therein. (See Objection 18; Compl., Ex. 17, 1-5, 15, ECF No. 1-17.) She can thus sue under Regulation X. 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of [Regulation X] pursuant to section 6(f) of RESPA."); see also Frank v. J.P.

11

Morgan Chase Bank, N.A., No. 15-cv-5811-LB, 2016 WL 3055901, at *4 (N.D. Cal. May 31, 2016) (finding Deed of Trust referring to plaintiff as "borrower" sufficient for RESPA to apply, though she did not sign promissory note).

III. Conclusion

For the above reasons, Chase's Motion to Dismiss (ECF No. 10) is GRANTED as to Count Three (good faith and fair dealing) and Count Five (extreme good faith). Chase's Motion to Dismiss is DENIED as to Count One (due process), Count Two (breach of contract), Count Four (misrepresentation), and Count Six (Regulation X).

IT IS SO ORDERED.

/s/ WESmith
_____
William E. Smith
Chief Judge
Date: July 17, 2018